IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHRISTOPHER L. GORE,**

**Plaintiff,**

**v.**

**ALLTEL COMMUNICATIONS, LLC, and
ALLTEL COMMUNICATIONS, LLC,
as Successor in Interest to SOUTHERN
ILLINOIS CELLULAR CORP., d/b/a
FIRST CELLULAR SOUTHERN ILLINOIS,**

**Defendants.**                              **No. 10-735-DRH**

## ORDER

**HERNDON, Chief Judge:**

Before the Court is the defendants' Alltel Communications, LLC (Alltel) and Alltel, as successor in interest to Southern Illinois Cellular Corp., d/b/a First Cellular Southern Illinois (First Cellular), (collectively the defendants unless context dictates otherwise) motion to compel individual arbitration or, alternatively, to stay litigation pending the disposition of *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *cert. granted*, *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) (Doc. 11) currently pending before the Supreme Court. The defendants seek to compel arbitration and stay these proceedings pending the resolution of the individual arbitration pursuant to the Federal Arbitration Act (the Act), 9 U.S.C. §§ 1-16. The plaintiff, Christopher Gore, objects to the motion, contending that the

arbitration provision the defendants rely upon does not apply to his claims. The plaintiff has also filed a motion for oral argument on the defendants' motion (Doc. 17). For the following reasons, the Court DENIES the defendants' motion (Doc. 11) without prejudice. The plaintiff's motion for oral argument (Doc. 17) is DENIED as moot.

## I. Background

Without getting too much into the facts, because they are in dispute and our review of them is unclear,[1] a few background facts are necessary to lay the context of this case. In October of 2005, the plaintiff entered into a contract with First Cellular for cell phone service (the First Cellular agreement). According to the plaintiff's affidavit attached to his memorandum in opposition to the defendants' motion to compel (Doc. 16), the plaintiff entered into a twenty-four month contract with First Cellular that expired on or about October 2007. The plaintiff alleged that as part of the agreement he purchased a global system for mobile communications (GSM) phone for $599.99[2] that would operate on First Cellular's wireless network. He also alleged that the First Cellular agreement provided an "unlimited talk time" for a monthly rate of between $30 to $50 per month plus

---

[1] Neither the parties nor the FAA addresses this issue. Because the Court's decision would not change whether the Court used the standard of review used when deciding a motion to dismiss or a motion for summary judgment the Court saves deciding this issue for another day.

[2] The service agreement attached to his memorandum in opposition shows that he received a $200 discount. It should be noted, that the attached service agreement is not signed by either party.

taxes and fees.

On May 1, 2006, during the time that the plaintiff's contract with First Cellular was in effect, Alltel acquired First Cellular.[3] Accordingly, Alltel began to transition the plaintiff's service from First Cellular to Alltel beginning in October of 2006. On November 3, 2006, Alltel sent the plaintiff its first bill. Page one of the bill welcomed the plaintiff to Alltel and thanked him for choosing Alltel. It also contained the balance due and indicated that his credit card would be charged on November 23, 2006, for the amount due. Page two of the bill contained two headings entitled "General Information" and "Important Messages." In relevant part, the "General Information" section stated, "These services are subject to Alltel's terms and conditions, which are found on the back of your customer service agreement and at www.altell.com. By paying this bill, you acknowledge that you are bound by these terms and conditions."[4] The "Important Messages" stated in whole that "[a]dditional important information may be included on the last page of your bill." The next six pages of the plaintiff's bill contained information related to the plaintiff's account and the last two pages of

---

[3]It was actually Southern Illinois Cellular Corp., but for clarification purposes we refer only to First Cellular.

[4]Assuming that the bill is an exact copy of the bill originally sent to the plaintiff, the font size used within the text in the "General Information" section appears to be approximately a font size seven. To illustrate, the "General Information" section would read as follows:

> "These services are subject to Alltel's terms and conditions, which are found on the back of your customer service agreement and at www.altell.com. By paying this bill, you acknowledge that you are bound by these terms and conditions."

his bill contained the "TERMS AND CONDITIONS FOR COMMUNICATION SERVICES." In relevant part, those terms and conditions contained an "Acceptance" provision near the top of the first page and an "ARBITRATION" provision near the bottom of the second page.

The "Acceptance" provision stated the following:

"You accept this Agreement when you do any of the following: (a) give us your written or electronic signature, (b) tell us orally or electronically that you accept, or (c) use or attempt to use any of the Equipment or Services. If you have never used the Services before and do not wish to be bound by these Terms and Conditions, do not begin using the Services or Equipment and notify us immediately."[5]

The "ARBITRATION" provision stated as follows:

"ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR RELATING TO THE SERVICES AND EQUIPMENT MUST BE SETTLED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION, USING THE WIRELESS INDUSTRY ARBITRATION RULES. INFORMATION REGARDING THIS PROCEDURE MAY BE FOUND AT WWW.ADR.ORG. EACH PARTY WILL BEAR THE COST OF PREPARING AND PROSECUTING ITS CASE. WE WILL REIMBURSE YOU FOR ANY FILING OR HEARING FEES TO THE EXTENT THEY EXCEED WHAT YOUR COURT COSTS WOULD HAVE BEEN IF YOUR CLAIM HAD BEEN RESOLVED IN A STATE COURT HAVING JURISDICTION. THE ARBITRATOR HAS NO POWER OR AUTHORITY TO ALTER OR

---

[5]As stated in our previous footnote, assuming that the bill is an exact copy of the bill originally sent to the plaintiff, the font size of both the "Acceptance" and "ARBITRATION" provisions appears to be approximately a font size six. To illustrate, the "ARBITRATION" clause would appear as follows:

"ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR RELATING TO THE SERVICES AND EQUIPMENT MUST BE SETTLED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION, USING THE WIRELESS INDUSTRY ARBITRATION RULES. INFORMATION REGARDING THIS PROCEDURE MAY BE FOUND AT WWW.ADR.ORG. EACH PARTY WILL BEAR THE COST OF PREPARING AND PROSECUTING ITS CASE. WE WILL REIMBURSE YOU FOR ANY FILING OR HEARING FEES TO THE EXTENT THEY EXCEED WHAT YOUR COURT COSTS WOULD HAVE BEEN IF YOUR CLAIM HAD BEEN RESOLVED IN A STATE COURT HAVING JURISDICTION. THE ARBITRATOR HAS NO POWER OR AUTHORITY TO ALTER OR MODIFY THE AGREEMENT OR THESE TERMS AND CONDITIONS, INCLUDING THE FOREGOING LIMITATION OF LIABILITY SECTION. ALL CLAIMS MUST BE ARBITRATED INDIVIDUALLY, AND THERE WILL BE NO CONSOLIDATION OR CLASS TREATMENT OF ANY CLAIMS. THIS PROVISION IS SUBJECT TO THE FEDERAL ARBITRATION ACT. YOU UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO THIS ARBITRATION CLAUSE, YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL."

>MODIFY THE AGREEMENT OR THESE TERMS AND CONDITIONS, INCLUDING THE FOREGOING LIMITATION OF LIABILITY SECTION. ALL CLAIMS MUST BE ARBITRATED INDIVIDUALLY, AND THERE WILL BE NO CONSOLIDATION OR CLASS TREATMENT OF ANY CLAIMS. THIS PROVISION IS SUBJECT TO THE FEDERAL ARBITRATION ACT. YOU UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO THIS ARBITRATION CLAUSE, YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL."

Based upon the plaintiff paying this bill[6] and subsequent bills containing this same language and the plaintiff extending his service with Alltel on numerous occasions, including up until the time the plaintiff filed his complaint, the defendants contend that the plaintiff agreed to arbitrate his claims against Alltel. The plaintiff disputes this, and he filed a complaint in Illinois state court alleging five counts against the defendants on behalf of himself and two sub-classes defined in his complaint, namely: 1) breach of contract for violations of the First Cellular agreement; 2) violations of the Illinois Consumer Fraud and Deceptive Practices Act and the Uniform Deceptive Practices Act; 3) civil conspiracy between the defendants; 4) aiding and abetting; and 5) unjust enrichment/common law restitution. The defendants then removed the plaintiff's claims from state court to this court on the basis of 28 U.S.C. § 1332.

After removing the plaintiff's claims into federal court, the defendants filed their motion to compel individual arbitration or, alternatively to stay litigation pending the resolution of *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir.

---

[6]It is unclear from the limited record before us whether the plaintiff's bill was paid automatically through his credit card as his bill indicated it would be or if the plaintiff paid his bill in another manner.

2009), *cert. granted*, *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) (Doc. 11).  In the defendants' memorandum in support of their motion (Doc. 12), the defendants argue that the plaintiff agreed to arbitrate all of his claims against Alltel on an individual basis and therefore pursuant to the Federal Arbitration Act (FAA), the plaintiff should be compelled to do so.  The defendants contend that the FAA governs this case, and that the court must make two inquiries: (1) whether the parties entered into a valid and enforceable agreement to arbitrate, and if so, (2) whether the present claims fall within the scope of that agreement. In support, the defendants argue that the plaintiff has agreed to arbitrate his claims on at least five separate occasions, beginning on November 23, 2006, when the plaintiff paid his bill with Alltel and agreed to the service terms and conditions.  With regard to the  whether the plaintiff's claims fall within the scope of the arbitration agreement, the defendants contend that the plaintiff's claims clearly fall within the broad scope of the arbitration provision in the service terms and conditions.

      The plaintiff responded in his memorandum in opposition to defendants' motion (Doc. 16) by contending that the defendants' motion must be denied because it is based upon an arbitration provision in a subsequent, different wireless service agreement to which First Cellular was not even a party.  The plaintiff argues that his first amended complaint arises from breaches of his agreement with First Cellular, which did not contain an arbitration provision, and not from any subsequent Alltel agreement.

## II. Analysis

The Act "reflects the fundamental principal that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). "Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010). "Any 'preference' for arbitration is reserved for the interpretation of the scope of a valid arbitration clause," i*d.,* not whether the parties have a valid arbitration clause in the first place. Accordingly, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010) (emphasis in original). "Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.* at 2858.

Under § 4 of the Act, a party may petition the Court for an order directing that arbitration proceed in the manner provided for in the arbitration agreement. Of course, the big kicker is whether an arbitration agreement actually exists between the parties, and if it does, the scope of that agreement, *i.e.*, whether the parties have agreed to arbitrate the dispute at issue. Both of those issues are at play in this case.

Section 4 of the Act provides in relevant part that the Court shall act as

follows after a petition under § 4 has been filed:

> "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

9 U.S.C. § 4.

Section 4 thus requires the Court to hold a trial if the making of the arbitration agreement is at issue. *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 509-10 (7th Cir. 2003). This is not to say that parties cannot agree to arbitrate the issue of whether they have agreed to arbitrate. *Jackson*, 130 S. Ct. at 2777 ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). Parties can certainly do so but "'[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.'" *Jackson*, S. Ct. at 2777-78 n.1 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); see also *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") Here, there is certainly no clear and unmistakable evidence that the parties agreed to arbitrate, and the arbitration provision the defendants argue

applies is silent on this issue. Thus, this decision is for the Court to decide.

"As with any contract, the touchstone for interpreting an arbitration clause must be the intention of the parties." *Agco Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). "Whether an issue is subject to arbitration is a simple matter of contract interpretation." *Welborn Clinic v. Medquist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002)."[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs.*, 475 U.S. at 649. That is for the arbitrator to decide (if the claims is subject to arbitration). *Id.* If the contract contains an arbitration clause, there is a presumption of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650. Any doubts should be resolved in favor of coverage. *Id.* (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). "Despite this strong pro-arbitration tilt, agreements must not be construed so broadly as to force arbitration of claims that the parties never agreed to submit to arbitration." *Welborn Clinic*, 301 F.3d at 639.

"[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010) (emphasis in original). "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a

party seeks to have the court enforce." *Id.* "In addition, these issues always include whether the clause was agreed to, and may include when that agreement was formed." *Id.* In fact, "[f]or purposes of determining arbitrability, *when* a contract is formed can be as critical as *whether* it was formed." *Id.* at 2860 (emphasis in original).

Here, the parties dispute whether they entered into an arbitration agreement at all, and if they did, when they did. For example, the plaintiff contends that his claims revolve around his agreement with First Cellular that he entered into in October 2006. He contends that the First Cellular agreement did not contain an arbitration agreement and that he is suing for acts committed by First Cellular and Alltel related to that contract. Alltel on the other hand, argues that the plaintiff entered into subsequent agreements with Alltel after Alltel acquired First Cellular that contained arbitration agreements. Alltel contends that by entering into these agreements the plaintiff agreed to submit his claims to arbitration. This issue alone, without the Court getting into whether the arbitration agreement covers the scope of the plaintiff's claims, requires the Court to proceed summarily to a trial of those issues unless it can be resolved by motion. See 9 U.S.C. § 4; see *Janiga*, 615 F.3d at 742 ("[T]he district court was correct–the court must decide whether a contract exists before it decides whether to stay an action and order arbitration.").

Thus, the Court orders that discovery be conducted in order for the Court to make an informed decision as to whether the parties have formed a valid

arbitration agreement, and if so, when. See *Granite Rock Co.*, 130 S. Ct. at 2857-58 (2010). If an arbitration agreement has been agreed to, then we must decide whether it applies to the claims in this case. See *id.* If as the plaintiff has argued, all of his claims relate to the First Cellular agreement then the Court would be hard-pressed to find that the arbitration provision found in subsequent agreements with Alltel would apply to the plaintiff's claims. See *Agco Corp.*, 216 F.3d at 595 ("As an assignee of Retail Obligations, AGCO is subject to the Retail Obligations' limitations– which include the absence of an arbitration provision."). But at this point, the Court need not decide this issue.

As to the defendants' argument that we should stay this case pending the result in *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *cert. granted*, *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010), the Court disagrees. *AT&T Mobility LLC* dealt with whether the class action waiver provision in AT&T's arbitration agreement was unconscionable. While the resolution of that case may become applicable to this case down the road if the arbitration provision applies, there is no need to stay this case pending its resolution.

### III. Conclusion

The defendants' motion to compel individual arbitration or, alternatively, to stay litigation pending the disposition of *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *cert. granted*, *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) (Doc. 11) is hereby DENIED without prejudice. The parties are

ordered to proceed with discovery, and the defendants are ordered to file a responsive pleading to the plaintiff's complaint within 21 days of the date this order is entered.  If the issue of whether this case is governed by an arbitration agreement cannot be resolved by motion following discovery, a special jury will be called to decide this issue.

**IT IS SO ORDERED.**

Signed this 1st day of April, 2011.

Digitally signed by David R. Herndon
Date: 2011.04.01 13:22:48 -05'00'

**Chief Judge
United States District Court**